We're ready for argument on our second case, Loftus v. Bobzien. Mr. Peterson. Good morning, your honors. May it please the court, Chap Peterson here for the appellant Nancy Loftus. Ms. Loftus was a 17-year attorney with the Fairfax County Attorney's Office up until 2014 when she was terminated after she was successfully elected to a member of the Fairfax City Council. Fairfax City is an independent jurisdiction established by charter by the Virginia General Assembly which sits within the four corners of Fairfax County. Just by way of comparison, Fairfax County is a jurisdiction of about 1.2 million people. Fairfax City is a jurisdiction of about 25,000 people, give or take a few people. The city has a charter which establishes how its city council operates and by charter a position on the city council is non-partisan. There are no party endorsements, you don't run with an R or a D next to your name and you couldn't if you wanted to under the city charter. The city council position is part-time. It pays $4,500 a year, $4,500 that is a year, and nearly every member that's ever served on city council is either retired or had some other full-time occupation to support the family. In this case, Ms. Loftus, when she decided to run for city council, as is laid out in our complaint, had been active in Fairfax City civic life, decided to run for city council and approached her supervisor, Mr. Bob Zien, who she had worked for directly for 17 years within the county attorney's office, and said, I'm thinking about running for the Fairfax City Council, do you have any objections? Mr. Bob Zien not only did not object, he actually referred her to Mr. Andreoli who was the county HR person in charge of these types of issues, who actually referred her to what I call the Virginia Right to Participate Law which is section 15.2-1512.2 of the Virginia Code, which essentially says that a local government employee can run for office and not be subject to any retaliation or discrimination. Ms. Loftus, he also alerted her Fairfax County Ordinance 3-1-19, which effectively says the same thing, that you can participate in local politics, including as a candidate, and not be subject to any discrimination as long as you don't do anything during office hours or in your office uniform. Ms. Loftus exchanged emails with Mr. Bob Zien on these facts in February, and in fact they even made reference to the fact that she couldn't use her, quote, uniform, and she joked about the fact it was her pinstripe suit, which apparently she used going to court doing foreclosure and lien work. Is any of that really relevant though to the ultimate issue? She's elected, she takes office, and her appointment is terminated, and the employer says this is an irreconcilable conflict of interest, and your employment can't continue if you hold the office. Well, Your Honor, I think we have to start with the first question, whether or not after being elected does she still have a First Amendment interest, and I think the answer is absolutely yes. Running for office, serving for office, either one is a First Amendment activity, and there are cases on point that we've cited in our briefs, and I will refer the Court specifically to the Seegers case from Georgia and the Hickman case from Texas, both of which dealt with local elected officials, which held office, one as a city councilman, one as a mayor, within a small town or a smaller jurisdiction, which was either adjacent to or within the four corners of a larger jurisdiction, and in both those situations the Court said they're actually holding the office, not just running for the office, but holding the office, constituted a protected First Amendment interest. I don't think the district court or your opposing counsel may be wrong on that. It contests that there's some First Amendment interest here. The question is the response of the employer. Well, Justice, that gets me back to my next point, and that is does the county have a law or uniform policy to deal with this type of situation, and the answer was either A, they didn't, or B, they did in that they allowed people to run for local office, and we cited in our complaint there was a woman who was an attorney for Fairfax County for 12 years and sat on the Fairfax City School Board without any objection or any complaint or any termination. There must not have been a conflict of interest in that case. Well, not only is there not only a conflict of interest, it's the ultimate conflict of interest because Fairfax City actually contracts with the county for the school system. In other words, if you go to Fairfax High School, you actually receive teachers that are paid for by Fairfax County Public Schools, and the city then pays a tuition to the county for each student that goes through the school system. The point is, Justice Thackeray. How would you propose that the conflict, assume there is a conflict of interest, how would you propose that would have been dealt with given that it's imputed to the whole office? Well, Justice, I don't agree with their analysis as imputed to the whole office, and we actually had Mr. Michael Rigsby, who is a 20-year state bar counselor, who said that's absolutely the wrong analysis, but assuming that it was, there's two ways that you can address it. One is you can have Ms. Loftus simply recuse herself on votes where the county's interest is at stake, and anyone who served in the General Assembly, you're familiar with this. You may have an issue where a client or you yourself have a direct voting interest as an attorney in an issue that comes before the legislature or a local governing body, and you recuse yourself. That happens all the time. The state ethics opinions that Mr. Bobzien refers to say that that won't work. Well, the state ethics opinions, first of all, are subordinate to the First Amendment in Virginia state law. Secondly, we take issue with those. Well, I think we're sort of missing the issue here. It's not really is there some First Amendment issue. Is there a First Amendment right? I think everybody throughout has agreed there's some First Amendment application here. The question is in the balancing. Yes, sir. You have legions of cases from Broderick and letter carriers and all the way down the line that talk about the balancing out, whether it's under the Hatch Act or something else. Yes, sir. I think that's the thrust of Judge Thacker's question is that if we assume that there is this conflict of interest and it's attributable to the office as a whole, then where do you go from there? Then let me get to my next point, Judge, and I apologize if I didn't direct it. My advice would have been simply recuse yourself from those offending votes. But the other option is quite simply reassign her to another position within the county. And we have named the county executive as a party to this case. If they felt her presence was so noxious to the county attorney's office, then they could simply find another position with her within the county workforce, which is several. Well, Mr. Peterson, the fact that they could have done that doesn't address whether or not they were required to do that as a matter of First Amendment law. Well, I think they are, Your Honor, because under First Amendment law and the balancing test, not only do you have to find out if there's a First Amendment interest, but you also have to assess what's the least restrictive means to restrict that interest. In other words, if I have an employee and maybe I believe she's in a sensitive position and this elected position may compromise her position as an attorney, then you look for alternative employment. You look to build some type of alternative as opposed to just firing her for cause. And I think one of the important aspects that was not addressed by Judge Hilton at the trial court level was, as a 17-year employee, she could only be terminated for cause in which they actually had to go through, and the county reg is 16.5-4, they actually had to find that she was unsuitable for employment in order to terminate her under the county's own ordinance, under their own employment regs. And they never made that finding. Rather, they terminated her for cause because she was elected to city council and took the position after she had been warned not to. And, again, assuming everything they say is true about the conflict of interest, and we strongly dispute that, and, again, we had very legal authority and legal scholars and we took no discovery as to what the motivations were, but assuming all that was true, there has to be some alternative, some less restrictive means. And that brings me to the larger point, Judge, and I think this is what – Tell us what cases you say do that, because if you go back into ancient history, you can recite Justice Holmes' quote in McAuliffe v. New Bedford where the question dealt with a policeman seeking public office. And Justice Holmes said that he may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. Well, I think if you look at the Pickering case, which is from the 1960s, but it's more recent than Justice Holmes, I think the Pickering case talks exactly about this type of balancing test where you have to look at whether there's a First Amendment interest and what allows the employer to maintain an effective workplace. And, again, assuming everything that the county said to be true, they have to go through some type of balancing test to say, first of all, is this a legitimate problem? And we dispute that it was a legitimate problem. Again, when you have other people that perform the same work that are not discriminated against, how can someone that is on the school board for 12 years, which contracts directly with the county, and this is not a problem, and then suddenly Ms. Loftus pops up and she is a problem. So is it in your complaint or the incorporated documents that this other individual you referred to was an attorney? Yes, that was in our complaint. And worked for the county attorney's office? Worked for the county as an attorney. And I believe she worked for the law enforcement office, but I know we – She was not a member of the law firm that would be construed as the county attorney's office. Well, but she would – Your Honor, to the extent you consider that a law firm, but she would be the county – For state bar ethics purposes, they consider it a law firm. Well, she would still have Fairfax County as a client. So if you're going to go on that same analysis, her client would be Fairfax County just as much as the Fairfax County attorney's client would be Fairfax County. So whether or not she had direct supervision from Mr. Bob Zien or whether or not she had direct supervision from another department, the point is that they tolerated, if you will, people that were employees, that were attorneys that worked for the county, and then were local government officials in the local governments within northern Virginia. And the reason why this is relevant, Judge, is that Fairfax County is a very large jurisdiction, and it's a very large employer. And if it has the ability to basically say, well, this employee can serve on a town council and this employee can serve on a city council, but this person cannot. If they have this ability to arbitrarily pick and choose, they don't have a uniform policy. They don't have a uniform statute. Basically, what that does is it chills the free speech. I mean, that is what the First Amendment is all about, in which they are effectively determining who can serve in local elected office and who cannot without any written policy based on just ad hoc determinations. And that really is what this case is about. And that's how we brought this in federal court. I mean, there is a state statute directly on point, but we brought it in federal court because I believe the First Amendment issues are very strong here. And we have overlapping jurisdictions in Virginia. It's one of the unique natures of our government in that you have incorporated cities within a county and you have a number of people that will work for a county and may serve on a town or city council, and just as they would serve in the General Assembly. But, again, these are issues that can be balanced. And if there is a legitimate objection, if there's a legitimate conflict, there can be least restrictive remedies that are found. In this case, they were not found. Your Honor, if there are no other questions, there are a couple of other points I just wanted to touch on. And I realize I'm coming to the back half of my time here. One of the points that they made was under 15.2-1512.2, and I say they, I mean, my colleagues representing the county, that there was no remedy. We have the state's right to participate law, but there's no remedy. Well, I would argue that the remedy would be, as in any Bowman claim, when there's an unlawful or an illegal termination, you have the right to challenge it. And that's what 15.2-1512.2 is. It essentially sets up a Bowman situation where if an employee is terminated, they have a right to Bowman goes back in time over 30 years. Either the Virginia Supreme Court or the General Assembly is very anxious to expand the ruling of Bowman. Well, Your Honor, if this was not a Bowman claim, then it would not exist because where you have a statute directly on point, you have a protected class of employees of which Ms. Loftus clearly qualifies, and where that person suffers the exact type of harm that's anticipated by the statute, to think that she would have no remedy, even under a Bowman claim, then it truly would have to go away at that point. But it doesn't go away. I mean, Bowman is still a viable state court claim. The last point I would make, Your Honor, is this, and that is simply, the statute 15.2-1512.2 talks about political activities including, and then talks about being a political candidate. And then the county has argued throughout that, well, you can be a political candidate, but you cannot actually serve in the office. Those are two distinct situations. They're actually not so distinct as the county would like you to believe. Once you are elected, of course, you are still a candidate. You have to file all the same disclosure forms, all the same gift forms. You have to do all the same activities. You simply become a candidate for re-election. That's not to say you can have dual employment. The Commonwealth already has statutes prohibiting dual employment, and those aren't implicated here. Again, this was a part-time, nonpartisan position. But the bottom line is, Your Honor, is that where you have a protected First Amendment interest and somebody strives as a member of a local government workforce to become an elected official in a separate jurisdiction where they're not setting their own salary, that that is a protected interest. So if we were to assume, purely for purposes of argument, that you were unsuccessful on the First Amendment claim, what would happen to your state claims at that point? Well, the state claims were dismissed along by judges. No, I mean for us. Would we consider those? Would we certify it to the Supreme Court of Virginia? Would we send it back to the district court so that the district court could return it to or dismiss it and have that take place in the state court? What would we do with those claims? Your Honor, in that sense, I'll go wherever you send me. So if I have to go to the Supreme Court, I'll go to the Supreme Court. I believe this is a First Amendment issue. If the court was to disagree and say, well, it's really a state court issue under 15.2-1512, you could always send it back to the district court to be litigated or you could certify it to the Supreme Court. I do believe very strongly that that statute was written to encompass this type of situation. And if it didn't encompass this type of situation, it would be truly a meaningless exercise where an employee, again, can run for an office and be threatened with termination during the middle of the campaign. It would become a meaningless statute. I'll go where you send me, though. Thank you very much. You've got some time left in rebuttal. Mr. Leary? I assume you agree, and you tell us if you don't, that Ms. Loftus does have some First Amendment expectations, not only in running for office but in holding an office. I believe the law is not clear on whether once you are in office, what First Amendment rights attach, whether they attach to everything. Certainly there are some acts that public officials do that are public official acts. You are not acting as a private citizen once you are in office because your acts are the acts of the office that you occupy. In terms of holding the office, is there a First Amendment right to hold the office once you're elected? The Supreme Court has not clearly addressed that issue. Both the Claussen decision and the Marino, Fletcher v. Marino decision from the Second Circuit. Claussen was decided this summer and Fletcher v. Marino both approached the issue as we and Judge Hilton approached the issue, which is let's assume that this is a First Amendment right, but a public employer can prohibit employees from even running for office if it will be disruptive, if it will undermine the efficiency or integrity of the office, if the employer believes that. If you approach it that way, then certainly holding the office, a restriction on holding two positions, is a lesser burden on any First Amendment right that may be there. We have accepted that. We don't necessarily agree that that is how the law would shake out because the Supreme Court itself has actually not squarely addressed whether candidacy itself is a purely First Amendment right. The Fifth Circuit in 2015 in the Phillips v. City of Dallas case held that candidacy alone is a First Amendment interest, but it recognizes the Supreme Court has not addressed it and there is not consistency among the circuits on this position. So it would be unnecessary for us to resolve that question here? Yes. Yes, and I think you can approach it the same way that the Seventh Circuit did just this summer in Claussen v. Pence because they addressed a statute in Indiana that requires municipal employees to, it deems them to have automatically resigned their office if they are elected to office in the same unit of government in which they are employed. That's where Indiana drew the line. And the court in the Seventh Circuit said this is far less burdensome than the restrictions that have been upheld in Mitchell and the 60, 70 years of cases we've had since Mitchell. Mitchell and those line of cases all demonstrate that public employers have legitimate and substantial interest in ensuring effectiveness, efficiency, and integrity in public employment. Isn't this a different unit of government that we're talking about here? Yes, and what Mitchell and Claussen all illustrate is that localities and departments can have the flexibility to determine where does that line need to be drawn. Now Fairfax County hasn't said no outside employment, period. They have said in Regulation 4.16, outside employment unless it is incompatible reduces the efficiency or effectiveness of your position. And so it allows the county to make a determination, the program head to make a determination as to whether this particular employment will be disruptive. And in this case, the information that Mr. Bobzien had beforehand demonstrated that it would be disruptive and would reduce Ms. Loftus' efficiency. In fact, the efficiency of the entire office because the bar had advised that none of the 39 attorneys in the office could represent the county in matters adverse to the city. And as Mr. Peterson alluded to earlier, the relationship between Fairfax County and Fairfax City is very unique. The city is located entirely within the county. And within the city there is land that is owned by the county. So you have a donut within a donut. And these two jurisdictions have tangled on matters of boundaries, zoning, the water wars that are referred to in the papers. They have lots of memoranda of agreement and understanding between the jurisdictions that have to go before the governing bodies for approval. So the likelihood of a conflict... Let's step back for just a minute. I've read Mr. Bobzien's letter. I've read the state ethics opinions, and they seem to say what he says they say. And we'll just assume that he was proceeding in good faith with his conclusions. But Mr. Peterson says we've got these other folks, Mr. Ricks, B. et al., who say that the state bar is just wrong. So what's your response to that? I would say that the Supreme Court's decision in Waters v. Churchill, which is cited in the Heffernan's case that they cited this summer, shows why it holds that an employer is not held to the standard of a civil trial in determining how to proceed in a situation when they perceive that there's disruptive or conduct by an employee that requires action. And so the only information that Mr. Bobzien had before him at the time he made his decision, in June 2014, was the opinion from the Virginia State Bar Ethics Committee. The opinions by Mr. Rigsby and Ms. Haley were not written until months later. They were not provided to Mr. Bobzien until months later. But even if they had been, it's entirely reasonable for someone in his position to say, I'm not going to roll the dice on my bar license and the licenses of the 40 other lawyers that work with me. And the Constitution doesn't require him to push the envelope when it comes to his duty to his client and his duty to the other people in the office in order to accommodate Ms. Loftus's secondary employment. Could he have taken a risk? He could have, but did the Constitution require him to? It did not. And is that in part your answer to the allegation that another employee was treated differently, who would run for a different position? That employee was not in the county attorney's office. So the analysis did not apply. The same analysis, the Rule 1.10 imputation analysis did not apply to that attorney. And the evidence in the record, which in this case was a bit unusual because it was a very thick set of attachments that were provided to the district court. And the evidence is that all the attorneys, the people who represent the county, work in the county attorney's office. This individual may have had a license, but she did not work for the county as an attorney. And being on the Fairfax City School Board, now... She didn't work for the county as an attorney or she didn't work in the county attorney's office? She did not work in the county attorney's office and she did not work for the county as an attorney because the evidence that was submitted to the district court on a motion to dismiss said that all of the attorneys, all the people that practice as lawyers for the county, represent the county in proceedings, work in the county attorney's office. You can have a law license. In fact, Ms. Loftus suggested that, well, why don't I work in another office of the county? She would not be practicing law as the county's attorney. She's not entering appearances, appearing in court as the attorneys from the county attorney's office are charged to do. And Mr. Bobzine, by the way, is the defendant here. He does not run the entire county. He doesn't, again, his testimony is also part of the record here because it's part of the grievance hearing. He didn't have the authority to appoint her to another position in another office. He has the authority to make decisions for the employees in his office. And I would venture to say there are no cases, even under Pickering, that would say that there's a constitutional obligation to find another job in the organization, somewhere in the organization for an employee who is deemed to be unable to perform the duties of her current position because of the conflict of interest. Well, Mr. Long, the county executive, is a defendant and an appellee here, and I assume his job responsibilities would go somewhat beyond the county attorney's office. Is there any argument made that he had an obligation to find Ms. Loftus a job somewhere else? The only allegations against Mr. Long come long after she's been terminated and we're in the grievance procedure, and he is asked to make a determination as to whether there's been compliance, which he does, and that is appealed. And the second role that he has, the cameo that he plays in this story, is that once there's a grievance hearing and the Civil Service Commission makes a decision, it's final. The commission made a recommendation, which under the regulations he's not required to accept, that the county see whether there's another position for her. But even under the regulations in Fairfax County, he's not required to do that. And we're not even talking about constitutional violation here. So he didn't even have an obligation under their personnel regulations, and there's no suggestion. There's a constitutional obligation to find another position. And the pickering line of cases which they have urged the court, once the balancing happens, you can dismiss the employee. The balancing isn't balance, you know, the government wins, and then now you need to find a lesser restrictive alternative. It is, do the government's interests win over the employee's First Amendment interests? And virtually every case, we haven't seen one otherwise, but virtually every case that says that when there is an actual, reasonable belief that this employee's activities will cause disruption in the office, will cause reduced efficiency, will raise questions of conflict of interest, appearances of impropriety, then the government wins. The only time that they have not won is when it's a speculative belief. But here, when the bar is telling you you cannot do this, that is, I would venture to say, reasonable grounds, an objectively reasonable basis to believe that there is a problem here. And I would, to answer your point on your question to Mr. Peterson about what else could the county have done, well, that's also discussed in the grievance record in terms of, you know, what were the alternatives? They couldn't ask the county for a waiver because many of these issues are prospective. The county attorney's office has 56, I believe, agencies that they represent within Fairfax County. They don't control who might pick up the phone, call them with a question about the city. At the time of Ms. Loftus' termination, there were two agreements with Fairfax City that attorneys in that office were negotiating on behalf of the county. There was a 9-1-1 agreement and an agreement regarding appointments to the library board. So recusal in that circumstance would not solve the situation because recusal as a city council member does not prevent people calling the county attorney's office with questions. And if that phone call comes to Ms. Loftus or comes to somebody else who is imputedly disqualified, in Ms. Loftus' case, does she wear her county councilman hat and let the county council know that someone in the county has a problem because under, and this goes back to the point of, is holding public office the same as running for public office? And I would say it's not because as a council member, she now has a duty of care, a duty of loyalty, a fiduciary responsibility that a candidate does not have. And if she receives information that the city is about to be sued or under consideration for suit, doesn't she have an obligation to tell the city council that? And how do you reconcile that obligation with her duty of confidentiality as a county attorney to the county? Those are real conflicts and they couldn't be reconciled. There wasn't another alternative. So I want to touch upon a couple other points. Mr. Peterson also argued that there's a state law right. The state law does not say holding political office. And as we know, the Virginia legislature knows how to write statutes. They had a vast array of political activities that are in the statute. If they wanted to say holding political office, they could have said that. To read that into the statute is to expand its protections and to tie the hands of employers to say, look, no matter what the office is, if you are a police officer and you now become the public defender, hey, that's a public office. You have a right to have both positions. It can't be that localities and employers are so tied that any time an employee obtains a political office, regardless of the conflict of interest. I don't think it's an exclusive list, right? It says including but not limited to or something like that, right? Yes, it does say including but not limited to, but that would change the intent of the statute because the statute is directed towards First Amendment activities as a private citizen. The actions of a public official are not the actions of a private citizen, and the duties that are imposed on a public official are not the duties that are imposed on a private citizen. As a candidate, you can raise any issue you want, but as a public official, you don't act in your own best interest. You're obligated. You have an oath to act in the best interest of your constituents, and so if the Virginia General Assembly wanted to extend to that, I think there would be a whole set of other issues they would have to resolve, and it would be inappropriate for the court to read that into the statute when clearly they could have added it if they wanted to add it and certainly knew that the next step after running for office, there's two possibilities. Either you win or you lose, and so it's not an inconceivable situation, and the lack of it in the statute counsels against trying to read something in there that's not there, and that would create a lot of problems for employers in the state. We also have argued that the district court didn't address it, but if you can get past establishing a First Amendment violation, you have to wrestle with qualified immunity here because the clearly established law that Mr. Bobzien was relying upon and that was there at the time is that employers do have the ability to restrict the First Amendment activities of their employees when it will undermine efficiency. The district court didn't address that. It didn't, but our point would be that they don't. What did Mr. Bobzien have? What case did he have? What law was clearly established that would say she has a right to continue employment as a county attorney when the bar is telling you that your whole office will be disqualified for any matters involving the city? This is not a situation, Mr. Bobzien also testified, that it's not like it was a city of Manassas with which we have no dealings. This is a city that we have a lot of dealings with where it's easy to foresee there's going to be a conflict. In fact, just a month before Ms. Loftus announced her candidacy, the county and the city settled through mediation a lawsuit that the city council had filed against the county. The council had to vote to file that lawsuit. The council had to agree to the mediated resolution, and that case was dismissed without prejudice, and that case was a challenge to the constitutionality of an ordinance passed by the county, and the county attorney's office represented the county in that. These were Ms. Loftus' colleagues, and if that lawsuit was filed again, and if Ms. Loftus was still there, that office could not work on that case. The institutional knowledge, the expertise that they have from representing the county, the county would not have the benefit of that, and that is a huge detriment to a public employer not to be able to use its lawyers, its salaried lawyers for cases that are of great importance. As I understand it, though, the qualified immunity defense, if it applies in this case, would only insulate the individual defendants against a damages claim but would not resolve Ms. Loftus' prospective claim for injunctive relief. Right, and for that, she has also made an official capacity claim, but the official capacity claim requires her to establish that there has been a policy. Her termination, her constitutional violation was as a result of an unconstitutional policy or custom. The allegation in the complaint was the policies and customs of Fairfax County permit this. I have an ordinance that permits me to do this, and that Mr. Bobzien's actions were contrary to Fairfax County policy, and so one, the allegations of the complaint belie any Monell claim. Two, Mr. Bobzien and Mr. Long, who really didn't do anything, but both of them are not policymakers, final policymakers, under this court's jurisprudence and under the Virginia Code. Neither of them has the ability to make final policy decisions. The duties of the county attorney and of the county executive are set out in the Code of Virginia and do not give them authority. The county executive is the administrative head of the county and administrative officer of the county, and the county attorney represents the county, but neither of them has the ability to make final policy for the county. So the official capacity claims would fail for that additional reason, and we did also raise that question. This isn't a case in where there's a question about Mr. Bobzien's motives. You might have some First Amendment cases that raise that question. There's no question that he had whether there was a pretext or some other motivation. His motivation is alleged in the complaint, and it's demonstrated in the exhibits and the 357-page grievance transcript. He was trying to avoid having a huge conflict of interest problem, a huge ethics problem for his office, and there were going to be practical problems also. Even if you get past the ethical issue, practical problems in how the office operates, were she to continue in this position and hold a seat on the city council. Okay. Thank you very much. Mr. Peterson. Thank you, Your Honor. I realize I only have a few minutes left, so I'm just going to hit the highlights here. I want to go back to, first of all, Mr. Long's role in all this, because granted he's not the county attorney, but he is the county executive. We have a county executive form of government here in Virginia. He is the final person that makes decisions on hiring and firing people, particularly in a grievance proceeding. My colleague said he didn't do anything. Well, that's exactly correct. He didn't do anything. Even the civil service recommendation after the grievance hearing was that they fined her other employment. They didn't. They terminated her. All of this information at that point, including the conflicting state bar opinions, the opinion we had for Mr. Brigsby, that all of this talk about conflicts and disqualifying every attorney in the office was, frankly, hyperbole. Even when he had all that information in front of him, they didn't look for any type of, again, what I would call least restrictive means. And the phrase least restrictive means is not something I invented. It actually comes out of a case that comes out of the Pickering line, and it's the case of Boland citing Lubin 515 United States Supreme Court 709, which talks about the fact that a court should look for least restrictive means in terms of taking away a client's First Amendment rights. And here they were talking about a resign to run law, and it says the restrictions placed on this right, however, must be the least restrictive means to accomplish the goal. This is the United States Supreme Court's talking. The resign to run policy is not the least restrictive means available to accomplish the state's goal. And then it talked about an exact type situation where an employee was reinstated when they had been fired because they ran for public office. Now, it's interesting, and I have almost a disadvantage in that I know the parties personally in this case, and I have great respect for them, judges, but I will say this. We filed this case as to whether or not this was a pretext or not a pretext. We don't really know. We never know because we didn't have a chance to take discovery, but here's the fact that we allege. Ms. Loftus approached Mr. Bobzien in February of 2014, told him exactly what she wanted to do, and he sent her an email saying, fine, do it. This is all documented. He sent her to the HR person who said, fine, do it. She followed up with emails. He said, I understand, no objections. Nineteen days before the election when she had already submitted her petition, her name's on the ballot, suddenly this State Bar concern pops up. He then files for the State Bar opinion after she had been elected, after he had already threatened her termination. So the deck was already stacked, quite frankly, Your Honors, and this whole idea that, gosh, he didn't stack the State Bar deck in terms of the opinion, right? Well, if you call that an opinion, first of all, she had actually asked for the opinion beforehand and said there was no per se conflict. He then asked for his opinion, in which the exact same State Bar attorney flipped around and said the opposite, although if you read that opinion, it's extremely cryptic. It just says LEOXYZ, and I can't remember the name. Legal ethics opinions control the situation. But, again, this was done after they had already threatened her termination. So talk about putting the cart before the horse. They had already committed that they were going to terminate her. Clearly something happened between February and April where Mr. Bobzien says fine, no objection, and April where he says if you get elected, you're fired. Something clearly happened. He asked for the legal ethics opinion after he had already threatened her termination. Again, this is what I call the chilling effect of the First Amendment, and whether it's 15.2-1512 or whether it's the First Amendment, the bottom line is the county had already committed. She was going to be terminated, and she was going to be made an example of, and we put that in our pleadings. I mean, we didn't hold back. As far as the other city council member, strike that, city school board member, that lady was an attorney. First of all, we put that in our pleadings. Secondly, as a fact, she was an attorney. I used to see her in court all the time. So this idea that somehow she was a run-of-the-mill employee, no, she was an attorney. And the bottom line is the county had no policy. They would allow people to run for local office as a matter of course, and then suddenly they decided to make an example of Ms. Loftus, and we've alleged that in our pleadings. We don't know why. We never took discovery. We never found out. But the bottom line is after they had terminated her, threatened to terminate her, after they had committed, they then went to the State Bar and got whatever cover they needed. But the bottom line is they had already made up their mind. Last point, Your Honor, and then I'll be quiet. I know you've got other things to do. I heard the word disrupted several times. That's the first time I've heard this word at any point in this litigation. It's been going on two years. My client never disrupted the office. She asked for her supervisor's permission to run for office. She ran for office. She got on the ballot. She was threatened with termination during the campaign. She continued the campaign. She won. She was terminated. That's not disruptive. There's no evidence and there's no allegation that she somehow disrupted the office or prevented her. I understood the argument to be that if she held both offices, it would be disruptive to the functioning of the attorney's office. Not that she was disruptive throughout. Fair point, Judge. And I'm out of time. Thank you very much. We'll come down and greet counsel and then take a very short recess.
judges: G. Steven Agee, Albert Diaz, Stephanie D. Thacker